503 S.E.2d 735

**In the Matter of H. Jackson GREGORY, Respondent.**

**No. 24816.**

Supreme Court of South Carolina.

Heard May 13, 1998.

Decided July 20, 1998.

Wilburn Brewer, Jr., of Nexsen Pruet Jacobs & Pollard, Columbia, for respondent.

Attorney General Charles Molony Condon and Assistant Deputy Attorney General J. Emory Smith, Columbia, for complainant.

PER CURIAM:

In this attorney disciplinary matter, a three-member hearing panel found Respondent H. Jackson Gregory committed misconduct as described below. The panel recommended a sixty-day suspension. On review, the Investigative Panel adopted the hearing panel's findings of facts and conclusions of law. It also recommended a sixty-day suspension. We agree with the panel's findings and conclusions as to misconduct.[1] However, we find Respondent's acts warrant a 30 day suspension from the practice of law.[2]

## THE LUTHI MORTGAGE/FALLAW MATTER

In 1991 Luthi Mortgage Company ("Luthi") hired Respondent to conduct a title search and close a loan on a piece of residential real estate. At the time, the owner of record was Maxine Fallaw. However, a man named Lloyd Prevette had applied for the mortgage. By means of a convoluted arrangement, the specific terms of which have never been determined, Prevette was to gain title to the property in trust and then mortgage it as trustee.[3]

---

1. Respondent has essentially admitted to the misconduct found by the panel. His only real contention regards the appropriate sanction.

2. Respondent is currently on interim suspension in an unrelated matter; we emphasize that the current 30–day suspension shall have no effect upon Respondent's interim suspension.

3. Fallaw had an outstanding mortgage on this property, wanted some alternative financing, and was having difficulty getting lender approval. A real estate broker introduced her to Prevette. She and Prevette came to an agreement, the terms of which have been hotly disputed.

Fallaw claimed Prevette was helping her procure a "reverse mortgage" whereby Prevette would pay off her mortgage, make certain

Luthi was aware Prevette was mortgaging the property as trustee. However, it is unclear how much it, or Respondent, knew about the underlying arrangement between Fallaw and Prevette. Luthi's witness testified the company agreed Prevette could borrow the money in trust so long as Respondent verified the validity of the trust, gave them a copy of the trust agreement, and provided written authorization for Prevette to mortgage the property. Luthi claimed it never knew who the beneficiary of the trust was.

At the closing, the following documents, all drafted by Respondent, were executed:

(1) a deed transferring title to the property from Fallaw to Prevette as trustee with stated consideration of "One Dollar and the assumption of a mortgage to Commercial Credit Corporation with a balance of $27,300;"

(2) a promissory note to Luthi in the amount of $65,012.81, signed by Prevette, both as trustee and individually;

(3) a mortgage by Prevette to Luthi in the amount of $65,012.81, signed by Prevette, both as trustee and individually;

(4) a Land Trust Agreement creating a trust comprised of the property, designating Prevette as trustee and Fallaw as sole beneficiary; and

(5) an Assignment of Beneficial Interest in Land Trust transferring all of Fallaw's beneficial interest in the newly-created land trust to Prevette.

---

desired improvements, and allow her to live there in exchange for receiving title when she died or left. Prevette claimed Fallaw agreed to deed the property to him and he would mortgage it. The mortgage proceeds would be used to pay off Fallaw's outstanding mortgage, make the improvements, and pay Prevette a fee. Fallaw would live on the property, make the loan payments, pay the property taxes and insurance, and maintain the property. When the entire loan was paid in full, Prevette would deed the property back to Fallaw. A written agreement embodying the terms as stated by Prevette was introduced into the record. Respondent claimed he was unaware this agreement existed until much later, when it was produced during the course of the civil litigation described *infra*.

The panel did not find credible Fallaw's testimony that she never signed this agreement. Nor did they find credible Fallaw's testimony that she did not realize she was deeding her property to Prevette and he was mortgaging it.

After the closing, Respondent deposited the loan proceeds into his trust account and made disbursements, the details of which will be discussed infra. He never sent Luthi the requested trust documents or written authorization for Prevette to mortgage the property. Fallaw continued to live in the house. Her outstanding mortgage was paid and the improvements to the property were made.

However, no payments on Luthi's mortgage were ever made, resulting in Luthi instituting a foreclosure action in July 1992. Prevette, the sole named defendant, defaulted and the master foreclosed in December 1992. The property was sold to Luthi at a foreclosure sale in February 1993. Ultimately, the foreclosure was nullified by court order after Fallaw filed a civil lawsuit against Luthi, Prevette, and Respondent on various causes of action. Judgments were rendered against Prevette and Respondent in this lawsuit. While the case was on appeal, all parties entered into a settlement agreement which resulted in Fallaw getting her property back with a new mortgage.

The panel found Respondent committed misconduct in two areas of this transaction. First, it found Respondent violated Rule 1.1, Rule 407, SCACR, in drafting the trust documents used at closing. Second, it found Respondent violated Rule 1.5, Rule 407, SCACR, in disbursing the loan proceeds.[4] Respondent does not dispute these findings, candidly admitting mistakes were made in both areas.

Rule 1.1 requires an attorney to provide competent representation to a client. "Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Rule 1.1, Rule 407, SCACR. Respondent was hired to paper a complicated real estate transaction, a primary component of which was to set up a land trust.[5] He drafted a trust agreement whereby

---

4. The complaint additionally alleged Respondent misappropriated client funds; failed to account; and committed criminal acts or conduct involving moral turpitude, fraud, deceit or dishonesty. Rules 1.1; 1.15; 8.4; Rule 407, SCACR. We agree with the panel's finding there is no clear and convincing evidence Respondent violated these provisions and therefore do not further address the allegations.

5. We decline to address the merit, or lack thereof, of this type of trust arrangement, or the decision to use it in this case. We are concerned

Prevette as trustee held legal and equitable title, and Fallaw as beneficiary retained an equitable interest. However, after creating this trust, he destroyed it with the assignment agreement. This assignment conveyed the equitable interest Fallaw had retained back to Prevette, thus merging the legal and equitable interests and as a practical matter ending the trust. We agree with the panel's finding there was no justification for this assignment agreement, which gave Prevette full title to the property to the detriment of Fallaw [6] and, ultimately, Luthi. Furthermore, Respondent did not comply with his client's request for certain important documents, and has offered no explanation for his failure to do so. As the hearing panel stated in its report:

> Although we do not find that Respondent knowingly participated in a fraud, his sloppiness in handling the closing and his lack of thoughtfulness in the documents he created for this transaction enabled Prevette to take great advantage of Fallaw, who obviously could not understand complicated legal documents and who came to suffer almost a catastrophic loss from the actions of Prevette. . . . At the very least, the incompetence with which Respondent handled this transaction facilitated [Prevette's] fraudulent attempt and embroiled Respondent's client, Luthi, in an embarrassing and expensive civil action. Furthermore, if Respondent had only complied with Luthi's request to send it the trust agreement before the closing, Luthi probably would have either objected to the trust arrangement prior to the closing, required clarification of the parties' respective responsibilities, or at least brought Fallaw into the later foreclosure suit. Any of these actions would have simplified things considerably.

---

with Respondent's actions in attempting to create it once the decision had been made.

**6.** The extent of Respondent's duty to Fallaw is unclear given the fact he was not technically representing her. The Complainant presented expert testimony that typically an attorney in a residential real estate closing owes some attorney-client duties to borrower, lender, and seller. Regardless of any duties arising as a matter of law from this transaction, we find Respondent clearly undertook some duty toward Fallaw; his own testimony was that he drafted the trust documents for her protection.

We find Respondent's representation as the closing attorney in this matter fell below the standards set forth in Rule 1.1, Rule 407, SCACR.[7]

The panel also found misconduct regarding Respondent's disbursement of the loan proceeds. Respondent admits he failed to disburse $1000 from the $45,000 check he deposited into his trust account. He claims the difference was an inadvertent accounting oversight, the money was left in his trust account, and he is ready and willing to give it to whomever is entitled to it.

Rule 1.15 requires a lawyer to "promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive." It is clear that, regardless of Respondent's intent, he violated this rule. At the very least, Respondent's actions demonstrate a lack of the due care required of attorneys when dealing with trust funds. *See* Rule 1.15 cmt., Rule 407, SCACR ("A lawyer should hold property of others with the care required of a professional fiduciary"). Regarding the issue of who should receive these additional funds, all injured parties in this transaction have now been compensated as a result of the related civil litigation. Therefore, we order that Respondent turn the funds over to the Lawyers' Fund for Client Protection of the South Carolina Bar.

## THE MULL MATTER

Mull hired Respondent to set up land trusts for three pieces of real estate. The designated trustee was Mary Funderburk, the wife of a business associate of Mull's. Respondent prepared the necessary deeds transferring title and had at least two of them signed and recorded.[8] However, the land trust

---

7. Respondent also admitted he made mistakes in drafting the land trust agreement. He used an agreement drafted five years earlier for another transaction, merely removing the first page, copying the property's legal description, and having the parties sign blank pages at the end. As a result, the trust agreement Prevette and Fallaw executed made the law of Ohio applicable (instead of South Carolina) and had a life of twenty years (instead of one). Respondent stated he "got in a hurry" because everyone was in a rush to close. Though no harm to the parties resulted from Respondent's sloppiness, we find his inattention to detail further demonstrates his failure to provide competent representation, in violation of Rule 1.1.

8. It is unclear from the record whether the deed to the third property was ever recorded.

agreements were never executed. Respondent testified Mrs. Funderburk never came to his office to sign the trust agreements, despite his repeated attempts to get her to do so. Ultimately, Mull terminated Respondent's representation and had to get the properties transferred back in his name.

The panel found Respondent's violated Rule 1.1, Rule 407, SCACR, in recording the deeds to Mrs. Funderburk without first (or contemporaneously) having the trust documents executed.[9] It relied in part on the complainant's expert witness, who opined deeding the property to a trustee without an accompanying land trust agreement would constitute incompetent representation because there would be no written evidence of the beneficiary's retained interest. We agree. Respondent's actions created the potential for severe prejudice to his client's rights in the property. As it was, his conduct necessitated Mull going to further effort and expense to regain title once the arrangement fell through.[10]

## CONCLUSION

For the foregoing reasons, we find Respondent's representation in the above matters violated Rules 1.1 and 1.5, Rule 407, SCACR.[11] His actions constitute professional misconduct.

---

**9.** The complaint alleged Respondent failed to act with reasonable diligence and promptness; failed to keep the client informed and comply with reasonable requests for information; failed to deliver funds or property to a client; and failed to deliver a full accounting. Rules 1.3; 1.4(a); 1.15; Rule 407, SCACR. These allegations stemmed from Respondent's representation of Mull in the land trust and other matters. We agree with the panel's finding there is no clear and convincing evidence Respondent violated these additional provisions and therefore do not further address the allegations.

**10.** We summarily dismiss Respondent's argument he cannot be found in violation of Rule 1.1 because the complaint did not specifically allege it. A liberal reading of the complaint shows its asserted violations of specified rules were not intended to be exclusive. Furthermore, Respondent was fully aware this was an issue before the panel at the hearing.

**11.** Respondent was also charged with misconduct arising from his representation of a third client. The panel found no misconduct as to this matter and the complainant did not except to this finding. We agree there is no clear and convincing evidence of misconduct and therefore decline to address these allegations.

*See* Rule 413, SCACR (defining misconduct as actions violating the Rules of professional Conduct, *see* ¶ B; conduct tending to bring legal profession into disrepute, *see* ¶ D; conduct demonstrating lack of professional competence, *see* ¶ E).[12]

We find the appropriate sanction for Respondent's conduct is a 30 day suspension. In addition, Respondent is ordered to enroll in and complete the Law Office Management Assistance Program (LOMAP). Finally, Respondent shall, within ten days from the date of this opinion, remit $1000 representing the undisbursed amount of closing funds in the Luthi Mortgage/Fallaw matter to the Lawyers' Fund for Client Protection of the South Carolina Bar.

**30 DAY SUSPENSION.**

---

12. The order adopting the new Rules for Lawyer Disciplinary Enforcement provided that any disciplinary case in which a hearing had been held by a hearing panel prior to January 1, 1997, would continue to conclusion under the former Rule on Disciplinary Procedure. As the panel hearing in this case was held December 10–11, 1996, citations to Rule 413, SCACR, will be to the former Rule on Disciplinary Procedure.